595 A.2d 206

**CITY OF PHILADELPHIA, Appellant,**

v.

**Nanci DUDA, A Minor, By Her Parents and Natural Guardians, Walter DUDA and Lillian Duda and Walter Duda and Lillian Duda, in their own right, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided July 8, 1991.

---

Miriam B. Brenaman, Philadelphia, for appellant.

Steven G. Wigrizer, Philadelphia, for appellees.

Before CRAIG, President Judge, BYER, J., and CRUMLISH, Jr., Senior Judge.

BYER, Judge.

Defendant City of Philadelphia appeals from a judgment entered on an adverse jury verdict in a personal injury action. The jury found the city negligent in connection with its operation of a public outdoor swimming pool and awarded damages. The trial court denied the city's motion for post-trial relief, which requested judgment notwithstanding the verdict or a new trial. We affirm.

The case arises out of tragic circumstances. Nanci Duda, then nine years old, went to the Robert Heitzman Recreation Center to swim. She was accompanied by three other children. Nanci swam and dove into the pool for several hours before her parents came to pick her up. Upon their arrival, Nanci called out to them to watch her dive. She dove into the pool at a point only three and one-half feet deep and struck her head on the bottom of the pool. This caused a severe brain injury, which resulted in a permanent reduction in Nanci's I.Q. and required the surgical placement of a shunt to relieve pressure from her brain.

The recreation center where this accident occurred was owned and operated by the city. The swimming pool was a supervised, outdoor, fenced-in, inground pool. The public could use the pool at no charge. The pool originally had painted depth markers along the pool decking and painted racing stripes at the bottom of the pool; however, at the time of the accident, the city had painted over the depth markers and racing stripes. Numbers on the inner rim of the pool at water level marked the three and one-half foot depth. The city had posted a single "rules" sign, which stated, among other things, "no diving," on the fence at the entrance to the pool area.

The jury apportioned 80% of the fault to the city and 20% to Nanci's parents. The jury also found that Nanci was not negligent. At the same time as it denied the city's motion for post-trial relief, the trial court molded the verdict, awarded delay damages under Pa.R.C.P. 238 and directed the entry of judgment. The trial court later amended the judgment, so that judgment was entered against the city

for a total amount of $779,907.50 (which includes delay damages of $279,907.50) and against Nancy's parents in the amount of $221,457.70 (which includes delay damages of $79,480.80), for a total judgment of $1,001,365.20.

The city [1] argues on appeal that: (1) it is immune from liability under the Recreation Use of Land and Water Act (Recreation Act) [2]; (2) it has governmental immunity [3]; (3) the trial court's instruction to the jury concerning a child's standard of care was erroneous and confusing; (4) the trial court erred in failing to grant a new trial based upon after-discovered evidence of alleged perjury by the jury foreman during *voir dire* examination; and (5) Pa.R.C.P. 238, which authorizes delay damages in cases of this nature, is unconstitutional.

## THE RECREATION ACT

■ The city argues that the outdoor swimming pool involved in this case is "land" within the scope of the immunity from liability under the Recreation Act. However, in *Ithier v. City of Philadelphia,* 137 Pa.Commonwealth Ct. 103, 585 A.2d 564 (1991), we rejected a similar contention by the City of Philadelphia involving an outdoor swimming pool at a recreational center similar to that involved in this case.

Based upon the Supreme Court's recognition in *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986), that the General Assembly intended to limit the applicability of the Recreation Act "to outdoor recreation on largely unimproved land," 510 Pa. at 15–16, 507 A.2d at 8, we held in *Ithier* "that an outdoor swimming pool is an improvement on the land not covered by the Recreation Act." 137 Pa.Commonwealth Ct. at 109, 585 A.2d at 567.

We believe that the correctness of our holding in *Ithier* is confirmed by the Supreme Court's decision six days later in

**1.** Nanci's parents did not appeal the judgment.

**2.** Act of February 2, 1966, P.L. (1965) 1860, 68 P.S. §§ 477–1—477–8.

**3.** 42 Pa.C.S. §§ 8541–8542.

*Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991), in which the court stated:

> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the [Recreation Act] was intended by the Legislature to circumvent this basic principle of tort law.

526 Pa. at 238, 585 A.2d at 450–51. The Supreme Court made this statement in the course of holding that the Recreation Act does not immunize the City of Philadelphia with respect to outdoor basketball and boccie courts.

Therefore, we hold that the Recreation Act does not limit the city's liability or otherwise preclude plaintiff's cause of action in this case.

## GOVERNMENTAL IMMUNITY

■ The city claims it has governmental immunity under 42 Pa.C.S. § 8546. The trial court held that the city was subject to liability under the real property exception to governmental immunity, 42 Pa.C.S. § 8542(b)(3). We agree with the trial court, but for somewhat different reasons.

Plaintiff's theory at trial was that the city negligently made the pool unsafe by painting over or removing racing stripes from the bottom of the pool and depth markers which had been placed at spaced intervals along the deck. The jury found that the city was negligent. The jury also found that this negligence was the most significant proximate cause of Nanci's injuries, having apportioned 80% of the causal responsibility to the city and only 20% to Nanci's parents and having rejected completely the city's contention that Nanci was negligent.

The city relies chiefly on *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), and *McCloskey v. Abington School District*, 115 Pa.Commonwealth Ct. 289, 539 A.2d 946 (1988) (en banc). The city cites *Mascaro* for the proposition:

> the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

514 Pa. at 363, 523 A.2d at 1124 (emphasis in original).

The city asserts that the real estate exception does not apply, because the defective condition of the land *"itself"* did not cause the injury. The city argues, "[i]t is beyond cavil that the lack of depth markings on the 'deck' and the lack of racing stripes in [sic] the bottom of the pool, did *not* strike Nanci Duda on the head and 'cause' her injury." Brief for Appellant, 15 (emphasis in original).

The city further contends that not only did the pool fail to rise up to strike Nanci in the head, but that the pool merely facilitated the injury by the acts of others, namely Nanci herself. The city argues, " 'others' in this context means 'non-employees.' Nanci Duda was not an employee or agent of the City, and her dive was 'an act of others.' " Brief for Appellant, 17.

For this latter point, the city relies not only on the above-quoted statement pulled out of context from *Mascaro*, but also on our opinion in *McCloskey*. In *McCloskey*, we held that *Mascaro* precluded recovery by a teenager who was rendered a quadraplegic when he fell from gymnastics rings, because he contributed to his own harm and, therefore, the real estate did not "itself" cause the injury but merely facilitated the injury by the act of the plaintiff himself.

More recently, in *Buschman v. Druck*, 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991), a majority of the judges expressed the view that the limitation on the real estate

exception expressed by the Supreme Court in *Mascaro* applies only to those situations where the act of another not only is a substantial factor in causing the harm but is of such a nature as to constitute a superceding cause.[4] That is not the situation in this case. The jury determined that the city's negligence in creating a dangerous condition on its real property was the most significant proximate cause of the injury. The jury further determined that Nanci did not contribute to her own harm by any negligence of her own.[5]

The jury's finding that Nanci was not negligent distinguishes this case from *McCloskey*. In short, the city's argument that it should be immunized because Nanci caused her own injury would require us to contradict the jury's verdict.

. In *Mascaro*, the Supreme Court stated, "[a]cts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit." 514 Pa. at 362, 523 A.2d at 1124. *See also Vann v. Board of Education of School District of Philadelphia*, 76 Pa.Commonwealth Ct. 604, 607–08, 464 A.2d 684, 686 (1983). Diving is an activity for which a swimming pool "is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used...." *Mascaro*. The city's negligent conduct in cover-

---

4. *See Buschman,* opinions of Judge Palladino and Judge Doyle.

5. In a separate concurring opinion in *Buschman,* one judge interpreted *Mascaro* not as requiring a superceding cause analysis, because such an analysis had been eschewed by a majority of the Supreme Court in *Mascaro,* but as requiring "that for liability to attach under the real property exception, there must be a direct nexus between the injury and the condition of the real property and that the negligence of the governmental defendant must be such as would create a primary rather than only a secondary liability." 139 Pa. Commonwealth Ct. at 193, 590 A.2d at 61 (Byer, J., concurring) (footnote omitted). Even if this alternative test were used, we would hold that *this case falls within the real estate exception.* There is a direct nexus between the condition of the real property and Nanci's injury, and the liability of the city is in the nature of a primary rather than secondary liability in tort.

ing or painting over the depth markers and racing stripes made the city's real property unsafe, and Nanci's injury thus was caused by the condition of the real estate and not by the act of another.

Therefore, we hold that this case falls within the scope of the real estate exception to governmental immunity.

## JURY INSTRUCTION ON CHILD'S STANDARD OF CARE

■ As previously noted, part of the city's defense was based upon the alleged negligence of the nine year old victim. The trial judge instructed the jury on this point immediately after instructing the jury on the general principles of negligence and standard of care. The complete instructions on these points are as follows:

Now, the legal term "negligence," otherwise known as carelessness, is the absence of ordinary care which a reasonably prudent person would exercise in the circumstances here presented.

Negligent conduct may consist either of an act or an omission to act when there is a duty to do so.

In other words, negligence is the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do in light of all the surrounding circumstances established by the evidence in this case.

It is for you to determine how a reasonably careful person would act in those circumstances.

Ordinary care is defined as the care a reasonably careful person would use under the circumstances presented in this case.

It is the duty of every person to use ordinary care, not only for his or her own safety and the protection of his or her property, but also to avoid injury to others.

What constitutes ordinary care varies according to the particular circumstances and conditions existing then and there.

The amount of care required by the law must be in keeping with the degree of danger involved.

Now, in this case you are concerned with the care taken or not taken by Nanci Duda, who was nine years old at the time of this incident.

The law does not hold children to the same standard of care as adults.

A child is required to exercise the ordinary care appropriate for a child; specifically, she is held to the measure of care which other children of the same age, experience, capacity and development would ordinarily exercise under similar circumstances.

Since the plaintiff was nine years old at the time of the incident, she is presumed incapable of negligence, and that presumption is rebuttable and weakens as the child nears the age of 14.

(Transcript, June 26, 1989, 98–99).

The city's argument focuses only on the last three of the above-quoted paragraphs. Specifically, the city contends that it was reversible error for the trial judge to instruct the jury in terms of a "presumption," even though the trial judge also told the jury that the "presumption" was rebuttable.

The city does not dispute that the trial judge correctly stated the law. The critical portion of the trial judge's instruction closely follows the language of our Supreme Court in *Kuhns v. Brugger*, 390 Pa. 331, 340, 135 A.2d 395, 401 (1957), in which the court held:

Both an adult and a minor are under an obligation to exercise reasonable care; however, the "reasonable care" required of a minor is measured by a different yardstick—it is that measure of care which other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. In applying that yardstick, we place minors in three categories based on their ages: minors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively

capable of negligence, the burden being placed on such minors to prove their incapacity; *minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.* (Emphasis added.) [6]

Although the trial judge's language is consistent with that of the Supreme Court, the city contends that the trial judge erred in refusing its request to instruct the jury in accordance with *Pennsylvania Suggested Standard Civil Jury Instructions*, § 3.10, which reads in pertinent part:

(II) AGES 7 TO 14—In this case, you are concerned with the care taken, or not taken, by ( ), who was ( ) years old at the time of the accident. The law does not hold children to the same standard of care as adults. A child is required to exercise the ordinary care appropriate for a child. Specifically, he (or she) is held to that measure of care which other children of the same age, experience, capacity and development would ordinarily exercise under similar circumstances.

The suggested standard instruction does not use the term "presumption" with respect to children in this age group. As explained in the Subcommittee Note following § 3.10:

No mention is made of the presumption here [the instruction concerning children between the ages of seven and fourteen]. The burden of establishing negligence or contributory negligence is in any event on the other party. To talk of presumptions would only serve to confuse the jury, the more so in this case since the force of the presumption weakens with every passing year.

The question, then, is whether the trial court committed reversible error by instructing the jury in terms of the Supreme Court's language in *Kuhns* instead of using the

---

**6.** Although *Kuhns* involved the alleged negligence of a child defendant, the presumptions established in that case have been applied to determining whether a child plaintiff was negligent in causing his or her own injuries. *See Berman v. Philadelphia Board of Education,* 310 Pa. Superior Ct. 153, 456 A.2d 545 (1983); *Dunn v. Teti,* 280 Pa. Superior Ct. 399, 421 A.2d 782 (1980).

suggested standard jury instruction. We hold that this was not reversible error.

"So long as the trial court properly covers the law on the issues raised in the case, [the trial judge] is given wide latitude in charging the jury." *Sheehan v. Cincinnati Shaper Co.*, 382 Pa.Superior Ct. 579, 586, 555 A.2d 1352, 1356, *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989). As the Superior Court observed in *Werner v. Quality Service Oil Co., Inc.*, 337 Pa.Superior Ct. 264, 269, 486 A.2d 1009, 1011 (1984), "[t]he refusal to give a proper instruction requested by a party is ground for a new trial only if the substance thereof has not otherwise been covered by the trial court's general charge."

■ Furthermore, the suggested standard jury instructions are not binding, even where a party requests a trial judge specifically to use them. "These instructions are guides only and the trial judge is free to deviate from them or ignore them entirely. What is important is whether the charge as a whole provides a sufficient and correct legal basis to guide a jury in its deliberations." *Mackowick v. Westinghouse Electric Corp.*, 373 Pa.Superior Ct. 434, 441, 541 A.2d 749, 752 (1988) (en banc), *affirmed*, 525 Pa. 52, 575 A.2d 100 (1990).

The city contends that the use of the term "presumption" in this context is confusing for the reason expressed in the Subcommittee Note following Section 3.10 of the suggested standard instructions. In addition, the city contends that its position is supported by our Supreme Court's decision in *Rice v. Shuman*, 513 Pa. 204, 519 A.2d 391 (1986), in which the court abolished the presumption of due care of a deceased or incapacitated party. However, the Supreme Court in *Rice* abolished the presumption of due care because of potential confusion after the adoption of comparative negligence in Pennsylvania. We see no basis in *Rice* for us to hold that it is reversible error to instruct a jury on the presumption recognized by our Supreme Court in *Kuhns*, because the instruction based upon *Kuhns* is con-

sistent with comparative negligence and *Kuhns* still is good law so far as we can discern.

Although it might be appropriate and even arguably better for a trial judge to use the suggested standard jury instruction on this point, we cannot say that the trial court erred in failing to do so, where the trial court correctly stated the law and we see no evidence of jury confusion or prejudice to the city.

## ALLEGED PERJURY OF JURY FOREMAN DURING VOIR DIRE

■ The city argues that it is entitled to a new trial because the jury foreman allegedly perjured himself during *voir dire* examination by failing to disclose that he was a party to litigation against the city. We review this question for abuse of discretion. *See Colosimo v. Pennsylvania Electric Co.*, 513 Pa. 155, 518 A.2d 1206 (1986).

As is the usual practice in Philadelphia, a judge did not preside over jury selection in this case. Although there was *voir dire* examination of the jurors by counsel for the parties, neither side requested that a court reporter be present during jury selection. Therefore, there is no transcript of the *voir dire* examination.

The prospective jurors filled out a standard jury panel questionnaire. Frank T. Brzozowski, who eventually was selected as a juror and became the foreman, stated that he was a paralegal and admitted that he had filed two claims; one in 1978 for unnecessary surgery, and the other in 1988 for libel and slander. He also revealed that one matter was still open. Brzozowski admitted that if the plaintiff had a similar accident or injuries to his own, it would influence him as a juror and offered further, "although my cases are not similar, but if they were I would be able to relate to circumstances." (101a). He did not fill in an answer to the last question, which asked if he had any relationship with the plaintiff, defendant, lawyers or judge.

After argument on its post-trial motion, the city learned that Brzozowski's pending claim was against the city, and it filed an amended motion, asserting that Brzozowski had perjured himself and that this entitled the city to a new trial.

The city maintains in an affidavit that, as a routine matter, its counsel asked Brzozowski during *voir dire* whether his suits involved the city. Plaintiff's counsel and his assistant filed affidavits stating that counsel for the city did not ask Brzozowski on *voir dire* whether the claims involved the city. Brzozowski stated in his own affidavit that he was never asked about his suits and that he believed the last question on the form was asking whether he was a friend, acquaintance, relative or employee of any of the parties listed, *i.e.* plaintiff, defendant, lawyers or judge.

It is appellant's duty to preserve the record. If a claim of error is not apparent on the record, we cannot entertain it. *Erkens v. Tredennick,* 353 Pa. Superior 236, 509 A.2d 424 (1986). The city failed to request the presence of a court reporter and, therefore, no record exists which would enable the trial court or us to resolve the dispute over whether the city asked Brzozowski about the city's involvement in his pending suit. The failure to ask appropriate questions on *voir dire* waives any disqualification which would have been revealed on *voir dire. See Commonwealth v. Shirey,* 333 Pa.Superior.Ct. 85, 481 A.2d 1314 (1984). The only exception to this waiver is the intentional deception by the juror. *Commonwealth v. Cavell,* 395 Pa. 134, 149 A.2d 434 (1959).

The trial court found that Brzozowski's "candidness on the form and the fact that the City is rarely involved in the type of cases Mr. Brzozowski had pending, leads this court to believe that Brzozowski did not perjure himself, but that the city's attorney failed to ask Mr. Brzozowski if his claims involved the City of Philadelphia. (trial court opinion, 9–10). Because of the absence of any record establishing what transpired at *voir dire,* we accept the trial court's

finding and hold that the trial judge acted within his discretion in denying a new trial on this basis.

## CONSTITUTIONALITY OF Pa.R.C.P. 238

The city's final argument is that Pa.R.C.P. 238, which authorizes an award of delay damages, is unconstitutional, both facially and as applied to the city. We recently rejected the same arguments by the city in *Yackobovitz v. Southeastern Pennsylvania Transportation Authority,* 139 Pa. Commonwealth Ct. 157, 590 A.2d 40 (1991). The day after we filed our opinion in *Yackobovitz,* the Supreme Court filed its decision in *Schrock v. Albert Einstein Medical Center,* 527 Pa. 191, 589 A.2d 1103 (1991), rejecting the argument that delay damages cannot be awarded under Pa.R.C.P. 238 without a finding that the defendant was at fault in causing the delay, an issue also raised by the city in this case. Therefore, we hold that the trial court properly awarded delay damages under Pa.R.C.P. 238. *See also Dietrich v. J.I. Case Co.,* 390 Pa. Superior Ct. 475, 568 A.2d 1272 (1990).

\*     \*     \*

Having concluded that none of the arguments raised by the city requires reversal, we affirm the judgment.

## ORDER

We affirm the judgment in favor of Nanci Duda against the City of Philadelphia.

The decision in this case was reached prior to the retirement of Senior Judge CRUMLISH.