Angela THORNTON, individually and in Her Capacity as Administratrix of the Estate of Geraldine Thornton

v.

PHILADELPHIA HOUSING AUTHORITY, Albany Remodeling, Firelite Alarms, Inc., Individually and t/a Honeywell International, Inc., Honeywell International, Inc., In their own right, Watts Regulatory Company, Ames Fire and Waterworks d/b/a Ames Company, Inc., and Kelly/Maiello, Inc.

Gloria Smith, individually and in Her Capacity as Administratrix of the Estate of Herman Nance

v.

Philadelphia Housing Authority, Albany Remodeling, Fire–Lite Alarms, Watts Regulatory Company, Ames Fire and Waterworks d/b/a Ames Company, Inc. and Kelly/Maiello, Inc.

Marlene David, Individually and in Her Capacity as Administratrix of the Estate of Henrietta Alston, Eva Cason and Jennifer Sherry David

v.

Albany Remodeling, Kelly/Maiello, Inc., Fire–Lite Alarms, Watts Regulatory: Company and Ames Fire and Waterworks d/b/a Ames Company, Inc.

Marlene David, Individually and in Her Capacity as Administratrix of the Estate of Henrietta Alston, Eva Cason and Jennifer Sherry David

v.

Philadelphia Housing Authority and Plymouth Hall.

Appeal of: Philadelphia Housing Authority.

Angela Thornton, individually and in Her Capacity as Administratrix of the Estate of Geraldine Thornton

v.

Philadelphia Housing Authority, Albany Remodeling, Firelite Alarms, Inc., Individually and t/a Honeywell International, Inc., Honeywell International, Inc., in their own right, Watts Regulatory Company, Ames Fire and Waterworks d/b/a Ames Company, Inc., and Kelly/Maiello, Inc.

Gloria Smith, individually and in Her Capacity as Administratrix of the Estate of Herman Nance

v.

Philadelphia Housing Authority, Albany Remodeling, Fire–Lite Alarms, Watts Regulatory Company, Ames Fire and Waterworks d/b/a Ames Company, Inc. and Kelly/Maiello, Inc.

Marlene David, Individually and in Her Capacity as Administratrix of the Estate of Henrietta Alston, Eva Cason and Jennifer Sherry David

v.

Albany Remodeling, Kelly/Maiello, Inc., Fire–Lite Alarms, Watts Regulatory Company and Ames Fire and Waterworks d/b/a Ames Company, Inc.

Marlene David, Individually and in Her Capacity as Administratrix of the Estate of Henrietta Alston, Eva Cason and Jennifer Sherry David

v.

Philadelphia Housing Authority and Plymouth Hall.

Appeal of: Angela Thornton, individually and in Her Capacity as Administratrix of the Estate of Geraldine Thornton; Gloria Smith, individually and in Her Capacity as Administratrix of the Estate of Herman Nance; and Marlene David, Individually and in Her Capacity as Administratrix of the Estate of Henrietta Alston.

Commonwealth Court of Pennsylvania.

Argued May 19, 2010.
Decided Sept. 23, 2010.

Arlene O. Freiman, Philadelphia, for designated appellant, Philadelphia Housing Authority.

John A. Lord, Philadelphia, for appellees.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

In this interlocutory appeal by permission,[1] the Philadelphia Housing Authority (PHA)[2] and the administratrix and personal representative (Plaintiff) of the estate of decedent Nance appeal the October 24, 2008, Order of the Court of Common Pleas of Philadelphia County (trial court) which denied the parties' cross-motions for summary judgment on the issue whether Plaintiff's claims are barred by sovereign immunity.[3]

### Factual Background

On October 7, 2004, a three-alarm fire occurred at Plymouth Hall, a four story, 70–unit apartment building for senior citizens with low to moderate income located in Philadelphia, Pennsylvania. Plymouth Hall is owned and operated by the PHA. The fire, smoke and soot contributed to injuries of many of the tenants and the deaths of three tenants: Nance, Henrietta Alston and Geraldine Thornton.

The common hallway of the premises contained an automatic four zone fire alarm system equipped with audible horns and strobe warning devices. According to the expert report of Sure Guard, NFPA

1. Originally, three lawsuits were filed in the Court of Common Pleas of Philadelphia County by the estates of three decedents, Geraldine Thornton (Thornton), Henrietta Alston (Alston) and Herman Nance (Nance). Thornton (Apartment # 108) and Alston (Apartment # 112) lived on the first floor, the same floor as Nance (Apartment # 104). Both women died of smoke and soot inhalation. The Thornton and Alston Complaints asserted wrongful death and survival claims premised on the building's lack of adequate fire warning and prevention systems. Essentially, they alleged that the defective alarm system caused an inordinate delay between the time the fire started and Zone # 6 smoke detectors triggered the building's main alarm system. During this time, the smoke and noxious fumes penetrated through the walls and ceilings of Thornton's and Alston's apartments making their escape impossible. The Nance, Thornton and Alston cases were consolidated by the trial court. By order dated August 26, 2009, this Court granted the PHA's Motion to Unconsolidate and Discontinue Appeals of Thornton and Alston. Accordingly, to the extent that the PHA raises issues relating to the claims of Alston and Thornton, it appearing that those parties have resolved their disputes with PHA, those claims will not be reviewed by the Court.

2. The PHA is a housing authority created under Pennsylvania's Housing Authorities Law, 35 P.S. §§ 1541–1568.1. Act of May 28, 1937, P.L. 955, *as amended*. This Court has declared that the PHA is a Commonwealth agency for purposes of sovereign immunity. *Williams v. Philadelphia Housing Authority*, 873 A.2d 81, 87 (Pa.Cmwlth.2005).

3. Sovereign Immunity Act, Sections 8521–8522 of the Judicial Code, 42 Pa.C.S. §§ 8521–8522.

[National Fire Protection Association] standards require "a minimum of 70 decibels at the pillow within a bedroom area." Report of Sure Guard, May 1, 2008 (SureGuard Expert Report), at 8; R.R. at 629a. Prior to the fire, Zone # 1 of the fire alarm system was disconnected or bypassed by a PHA employee leaving 53 heat detectors, or 50% of the first floor heat detection system nonfunctional. As a result, the heat detector circuit in Nance's apartment failed, activation of the main fire alarm system was delayed, and the tenants were not timely warned. Sure Guard Expert Report at 22; R.R. at 643a. Because Plymouth Hall did not have fire stops installed above the suspended ceilings nothing prevented the spread of fire and smoke between apartments. However, each individual apartment was equipped with a smoke detector.

Plaintiff's experts opined that if the heat detectors in Zone # 1 were not disconnected, the building's main alarm system, which included the horns and strobe lights, would have been activated "within one minute 41 seconds to two minutes and 40 seconds." Report of Sure Guard, May 1, 2008, at 9; Reproduced Record (R.R.) at 630a. According to eyewitness accounts produced by Plaintiff, by the time the alarms sounded, there was dark smoke in the hallways of the second and third floors and smoke was coming out of the second floor elevator shaft, which was located 100 feet from Nance's apartment.

The Philadelphia Fire Department and the Fire Marshall concluded that the fire originated in the "interior of apartment 104", Nance's apartment. Philadelphia Fire Department, Fire Marshal's Office, Report of Fire Alarm, (Fire Marshal Report), October 7, 2004, at 7; R.R. at 292a. The cause of the fire was "unattended cooking equipment" on a lit gas stove. Fire Marshal Report at 7; R.R. at 292a.

A paramedic who attempted to rescue Nance through the first floor window of Apartment 104 testified that he saw Nance sitting on a bed which was fully engulfed in flames. Nance died from thermal burns and smoke inhalation. His body was discovered in the hallway outside his apartment.

### Nance's Complaint

On September 28, 2006, Plaintiff asserted wrongful death and survival claims against, among others, the PHA. Counts I and II of the ten-count Complaint addressed PHA's alleged negligence. Both Counts I and II are based upon theories of failure to inspect, failure to discover, failure to install and/or maintain, failure to warn and failure to comply with Philadelphia Fire and Building Codes. Both counts are identical in alleging that PHA was negligent in the following:

24. Defendant, the Philadelphia Housing Authority, breached its duties to decedent, Herman Nance, by being careless and negligent in:

(a) creating a dangerous condition of real property by failing to provide and maintain a safe and adequate fire/smoke protection system for the residents of the building....

(b) creating a dangerous condition of real property by allowing the fire warning and/or suppression system to be disabled, either wholly and/or in part;

(c) failing to install and/or maintain an adequate fire/smoke detection system including, but not limited to, smoke detectors, fire hydrants and sprinklers in compliance with the applicable statutory regulations, including the Philadelphia Fire Code, the Philadelphia Building Code and all other relevant codes, rendering the premises un-

safe as to invitees, licensees or others legally on the premises;

(d) failing to comply with applicable building codes, City laws, ordinances and regulations, relating to the maintenance of the aforementioned premises and specifically with requirements corresponding to the fire warning and suppression system and the number of entrances and exits to the premises;

(e) creating and maintaining a dangerous condition i.e., a building without a safe and adequate fire safety system, despite the appearance that there was such a system in operation at all times;

(f) failing to discover and correct the dangerous condition;

(g) failing to take reasonable care under the circumstances to avoid injury to residents ... from fires in the building;

(h) failing to provide emergency lighting, fire extinguishing devices, or other safety devices which would have prevented or minimized injury to residents including the decedent;

(i) failing to act to remedy the aforesaid conditions, despite having been notified and issued citations corresponding to these defective conditions by the Philadelphia Department of Licenses and Inspections;

(j) failing to take effective action upon notice of defects and/or defective conditions relating to the premises, including defects and/or defective conditions in the fire protection and/or suppression systems and the manners in which residents and their guests entered or exited the property;

(k) failing to provide sufficient warnings as to the reasonable, foreseeable defects and/or dangerous nature of the premises to such invitees, licensees and others legally on the premises;

(l) failing to test and/or inspect the premises to determine whether said premises was dangerous to invitees, licensees and/or others legally on the premises;

(m) creating a dangerous condition by failing to install door closers to adequately contain a foreseeable fire;

(n) creating a dangerous condition by failing to have fire rated doors;

(o) creating a dangerous condition by failing to have fire rated locks on its doors;

(p) creating a dangerous condition by removing or permitting the removal of the original plaster and drywall ceiling thereby making the building more vulnerable to a fire;

(q) creating a dangerous condition by installing or permitting the installation of a drop ceiling which made the building more vulnerable to a fire;

(r) creating a dangerous condition by failing to adequately maintain the fire alarm system;

(s) creating a dangerous condition by failing to discover that a large portion of the fire alarm system did not function properly;

(t) creating a dangerous condition by failing to install and/or require the installation of fire insulation in the partition walls of each apartment; and

(u) creating a dangerous condition by failing to install and/or require ...

adequate fire insulation in the pipe chases of Plymouth Hall.

25. By reason of the carelessness, and negligence of the defendant, PHA . . . plaintiff's decedent, Herman Nance, was caused to sustain . . . burn and inhalation injuries on October 7, 2004. These injuries eventually resulted in his death on October 9, 2004. . . .

Herman Nance Complaint, September 28, 2006, Nos. 24(a)–(u)–25.

### Motions for Summary Judgment

After discovery, the parties moved for summary judgment on whether the real estate exception to the PHA's sovereign immunity applied.[4] Alternatively, the parties requested that the trial court certify the matter for immediate appeal on the grounds that there is a controlling question of law on which there is substantial grounds for difference of opinion.

On October 24, 2007, the trial court denied the motions for summary judgment and issued an order and memorandum expressing that her Order of October 24, 2008, was appropriate for interlocutory appeal. The parties then petitioned for permission to appeal which this Court granted on December 15, 2008.

### Issue Before This Court—Applicability of the Real Estate Exception

This Court reframed the issue for review[5] as follows: Does the real estate exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(4), permit Plaintiff's claims against the PHA?

### Real Estate Exception to Sovereign Immunity

■ Under the real estate exception contained in Section 8522(b)(4) of the Judicial Code, a Commonwealth agency is liable where the plaintiff's injuries are caused by "[a] dangerous condition of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4). In *Snyder v. Harmon*, 522 Pa. 424, 433, 562 A.2d 307, 311 (1989), our Supreme Court clarified that liability against a governmental entity is predicated on proof that a condition of governmental realty itself, deriving, originating from, or having realty as its source, caused plaintiff's injuries. *Snyder*, 522 Pa. at 433, 562 A.2d at 311. If the dangerous condition "merely facilitates an injury to be caused by the acts of other persons, the defect or dangerous condition is not action-

---

4. Apparently, there were inconsistent rulings by different judges before the cases were consolidated which prompted this interlocutory appeal.

5. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *Fine v. Checcio*, 582 Pa. 253, 265, 870 A.2d 850, 857 (2005). A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. *Id.* In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against

the moving party. *Id.* Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. *Id.*

An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Id.* at 265 n. 3, 870 A.2d at 857 n. 3. In making this determination, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Strine v. Commonwealth of Pennsylvania MCARE Fund*, 586 Pa. 395, 894 A.2d 733 (2006). An issue is material if its resolution could affect the outcome of the case under the governing law. *Id.*

able." *Williams,* 873 A.2d at 86 (citations omitted).

### Applicability of the Real Estate Exception

The allegations of the Complaint fall into three types of physical defects of Plymouth Hall: (1) the lack of fire insulation in the partition walls of each apartment which would have prevented the spread of fire between the kitchen and Nance's bedroom; (2) the presence of old plaster and drop ceiling which facilitated the spread of the fire from the kitchen to Nance's bedroom; and (3) the lack of a fully functional fire/smoke alarm system with strident horns and strobe lights in violation of the Philadelphia Fire Prevention Code, Philadelphia Building Code and BOCA National Fire Prevention Code, which would have provided Nance and other tenants with earlier notice of the fire.

Importantly, it is not for this Court to decide in ruling on a motion for summary judgment whether the alleged defects factually amounted to dangerous conditions of the real estate. These are ultimately factual questions for a jury to decide if the matter proceeds past summary judgment, as is the question of whether any dangerous condition was the proximate cause of Nance's injuries/death. The question for this Court is one of law, i.e., whether (1) the absence of fully-functional fire detection and protection systems, (2) the absence of fire walls, and (3) presence of old plaster and drop ceilings, falls within any of the enumerated exceptions to sovereign immunity. In other words, this Court must determine if the defects alleged are of the *kind* which may support liability under the real estate exception. *Dean v. Commonwealth of Pennsylvania,* 561 Pa. 503, 512, 751 A.2d 1130, 1135 (2000). In making this determination, this Court must utilize a rule of strict interpretation based upon the "legislature's intent in ... the Sovereign Immunity [Act] ... to shield [the] government from liability." *Jones v. Southeastern Pennsylvania Transportation Authority (SEPTA),* 565 Pa. 211, 220, 772 A.2d 435, 440 (2001).

The PHA asserts that the defects alleged by Plaintiff go to the inadequacy of the systems to *warn* tenants of the fire and *lessen* the spread of smoke and flames from the fire. The PHA argues that the fact that Plymouth Hall could have been made safer or could have had different or additional features which would have minimized or prevented injuries from other sources (in this case, the fire and smoke from the Nance unit) is not sufficient to permit liability under the real estate exception. The PHA relies on several cases which held that the real estate exception did not apply where the defects in the real estate did not cause or contribute in any way to the plaintiff's harm. It maintains that Plaintiff's claims are indistinguishable from the claims for failure to protect from out-of-control vehicles, falling objects and criminal acts of third parties which this Court has held are barred by sovereign immunity.

For example, in *Dean,* the plaintiff claimed that PennDOT was liable as a joint tortfeasor for failing to erect a guardrail along its highway to prevent or reduce injury when a driver lost control of his vehicle. *Dean,* 561 Pa. at 505, 751 A.2d at 1131. The Supreme Court held that this claim did not satisfy the requirements of the real estate exception and that plaintiff's action was barred by sovereign immunity because "the legislature did not intend to impose liability upon the government whenever a plaintiff alleged that his or her injuries could have been avoided or minimized had the government installed a guardrail along side of the roadway."

*Dean,* 561 Pa. at 511–512, 751 A.2d at 1134. The fact that a guardrail would have made the highway safer did not bring plaintiff's claim within the real estate exception where its absence was not the cause of the accident itself because "the Commonwealth ... is not a guarantor of the safety of [its property] but is only exposed to liability for dangerous conditions thereof." *Dean,* 561 Pa. at 511, n. 8, 751 A.2d at 1134, n. 8.

In *Svege v. Interstate Safety Service,* 862 A.2d 752 (Pa.Cmwlth.2004) and *Simko v. County of Allegheny,* 869 A.2d 571 (Pa. Cmwlth.2005), this Court held that the real estate exception did not apply where plaintiffs claimed that defective roadway barriers caused their decedents' deaths by failing to protect them from out-of-control drivers. In *Svege,* plaintiffs claimed that a highway was defective because the barrier separating the divided highway was inadequate to keep an out-of-control truck from crossing over into oncoming traffic and colliding with decedents' vehicle. The Court held that sovereign immunity barred the claim because the real estate exception does not apply to claims for failure to avoid or minimize injuries from dangers which the Commonwealth did not cause. *Svege,* 862 A.2d at 755. In *Simko,* the government's failure to maintain a guardrail allowed a vehicle to go off the roadway and strike pedestrians, killing them. This Court held that the real estate exception did not apply and that plaintiffs' claims were barred by immunity. *Simko,* 869 A.2d at 574–575.

In *Douglas v. Philadelphia Housing Authority,* 134 Pa.Cmwlth. 441, 578 A.2d 1011 (1990), and *Cowell v. Commonwealth Department of Transportation,* 883 A.2d 705 (Pa.Cmwlth.2005), this Court held that the real estate exception does not apply to claims for failure to protect persons on Commonwealth property from objects thrown by third parties. In *Douglas,* plaintiffs claimed that PHA was negligent for failing to protect the users of walkways on its premises from objects falling from the upper floors of its buildings. This Court held that such a claim was barred by sovereign immunity because the accident was caused by a third person's dropping a hambone out the window, not by any condition of PHA's walkway or premises. *Douglas,* 578 A.2d at 1013. In *Cowell,* this Court held that sovereign immunity barred a claim for the death of a car passenger caused by an object dropped from a bridge. The real estate exception did not apply because "neither the Bridge itself nor any artificial condition thereon caused the injuries.... Rather, whether characterized as intentional or negligent, the conduct of a third party resulted in an object being thrown or dropped from the Bridge." *Cowell,* 883 A.2d at 709–710.

Finally, in *Williams,* the plaintiff, a tenant in public housing, was shot by Anderson, another tenant who had a prior criminal record. Because of his prior criminal record, Anderson's tenancy violated the rules of the Housing Authority. The plaintiff alleged that Anderson's presence, along with the unmanned security booth and the malfunctioning of the security cameras, constituted physical defects at the housing project. This Court held that sovereign immunity barred the plaintiffs' claims because her injuries were caused by a bullet, not by a physical feature of the housing project.

### This Case Presents a Distinguishable Factual Scenario

■■■■ This Court does not agree that the factual scenario presented here necessarily fits the footprint of controversies where this Court has held the real estate exception does not apply. First, this Court does not believe that Plymouth Hall's building's fire and smoke detection

system is analogous to a guardrail or barrier for purposes of the real estate exception. Further, this case does not present a question of whether the PHA simply "failed to protect" its tenants from a third party or act beyond its control. The Court believes this controversy is different.

While there are no other cases involving a defective or malfunctioning fire/smoke detection system or a government building's susceptibility to fire, there is precedent for the liability attaching to alleged defects of the real estate which were concurrent or contributing causes of an injury. In these cases, our Courts have focused on whether the alleged defect was an actual *mechanism* of the injury. As here, these cases involved the lack or absence of and/or the failure to initially install a feature or fixture on real property which made the property unsafe for its intended purpose and were held to constitute a defect in real property.

Especially instructive is *City of Philadelphia v. Duda*, 141 Pa.Cmwlth. 88, 595 A.2d 206 (1991). There, this Court upheld liability on behalf of a child, Nanci Duda (Duda), who was severely brain injured in a diving accident at a City pool. This Court held that the failure to have depth markings along the pool deck and lack of black racing stripes on the bottom of the pool, to assist Duda's depth perception, constituted a defect in real property. The jury returned a verdict in favor of Duda and the City appealed.

On appeal, the City argued that the real estate exception did not apply because the pool did not rise up and strike Duda in the head, but that the pool merely facilitated the injury by the acts of another, namely Duda herself. The City argued that "[i]t is beyond cavil that the lack of depth markings on the deck and the lack of racing stripes in the bottom of the pool, did *not* strike Nanci Duda on the head and

'cause' her injury." *Duda*, 595 A.2d at 209. This Court rejected the argument because "the City's negligent conduct in covering or painting over the depth markers and racing stripes made the City's real property unsafe for its intended use." *Id.* at 210.

The PHA makes a similar argument here that the defective smoke alarm system itself did not explode and cause Nance's injuries nor did it cause the fire. As this Court held in *Duda*, it is not necessary that the smoke alarm blow up or physically cause the injury itself for the Plaintiff to recover. Here, Plaintiff presented expert evidence that PHA disconnected the Code-mandated fire alarm system in Zone #1 and that this in turn, rendered the smoke/fire detection system useless in terms of alerting residents to the danger of fire and smoke in the building. Plaintiff argues that like the absence of pool racing stripes and depth markers in *Duda*, the absence of a Code-mandated functioning smoke alarm system rendered the building unsafe for its intended purpose because there were no loud horns or strobe lights that may have been loud enough to alert Nance or his neighbors of the peril so he had time to exit his apartment in time to avoid his fatal injuries. In other words, it is Plaintiff's contention that a building that is incapable of warning its inhabitants that it is about to turn into an inescapable smoke-filled inferno is not safe for its intended purpose.

In *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), the parents of a three-year old boy killed in a head-on collision sued the City of Philadelphia after a vehicle followed an incorrectly painted arrow which directed it into oncoming traffic. The City asserted the defense of sovereign immunity. The jury found unequivocally that the action of the City's employee in misplacing the directional

sign was a substantial contributing cause of the accident. The Supreme Court upheld the verdict because the City's action did not merely facilitate the injuries but was in fact a substantial contributing *cause* of them. Even though the directional sign itself did not strike the child, its position did cause another vehicle to travel the wrong direction into the path of plaintiffs' car and cause the child's fatal injuries.

In the present controversy, Plaintiff alleges that there was a failure of the Code-mandated fire/smoke detection systems and lack of fire insulation which allowed the fire and smoke to spread rapidly from the kitchen to the bedroom for a period of time undetected. According to Plaintiff's evidence, *it was this "delay" and "rapid transmission of fire" created by the dangerous conditions of Plymouth Hall which caused Nance to succumb to the fire and smoke.* It is alleged that the delay was proximately and directly caused by a dangerous condition of the real estate, i.e., the defective alarm system. The purpose of the smoke/fire detection system was to provide an early warning of fire and to prevent and reduce damages and resulting injuries. Plaintiff's experts opined that the rapid spread of fire was further precipitated by the lack of fire insulation between rooms. These alleged defects have their source in the Commonwealth realty.

Also, this controversy may not be resolved by simply blaming the fire on Nance. The PHA stresses that *the fire* was not caused by any defect in the PHA building or by conduct of a PHA employee. It alleges that *"[t]he fire was not caused by any defect in the PHA building or by any conduct of any PHA employee"* and that that *the frying pan* did not have its source in the reality. Brief at 8. (Emphasis added).

Although it is clear that neither the negligence of the PHA nor any defective condition of the PHA's apartment building *caused the fire,* as asserted by the PHA, the relevant inquiry is whether a defect in the real estate itself *caused the decedent's harm. Dean,* 561 Pa. at 508–510, 751 A.2d at 1133–34. Plaintiff presented experts who opined that the defective fire/smoke detection system and lack of fire insulation were "dangerous conditions" which *caused* Nance's fatal injuries, just as the absence of the stripes at the bottom of the pool *caused* Duda's injuries and the misplaced directional sign *caused* the fatal car accident in *Crowell.*

A fire does not necessarily need to end in injury or death, even to the individual who started it. The very purpose of the Code-mandated smoke/fire detection system was to alert tenants of the fire in time to escape. Discovery revealed that Nance was seen sitting on his bed which was engulfed in flames. *Therefore, there is at least a question of material fact as to whether an earlier and/or louder alarm would have lessened or eliminated Nance's exposure to the smoke and flames by alerting him or his neighbors.*

The Code-mandated smoke and fire alarm systems are part of the PHA's real property[6] and the defects in the fire and smoke alarms systems constitute defects in the real property itself. The Code-mandated fire/smoke detection system was designed to be part of and, indeed, a vital component designed to protect the structure and integrity of the building itself, along with those inside it. Without it, Plymouth Hall was unsafe for its intended

---

**6.** A smoke or fire alarm is presumed to become part of the real estate. 61 Pa.Code § 31.11 (listing smoke alarm, fire alarm, and fire protection systems as items that are presumed to become part of real estate).

purpose. Because it failed, the building itself failed. Moreover, the undisputed facts indicate that insulation or "fire stops" were not installed in each apartment. Viewing the facts most favorable to Plaintiff, the lack of insulation enhanced the spread of fire and smoke throughout Plymouth Hall substantially faster than if it had been installed. Report of Arthur Shields, CPM, May 2, 2008, at 3; R.R. at 657a. The lack of a Code-mandated functioning fire alarm system and fire stops did not merely facilitate Nance's fatal injuries. According to the Plaintiff's pleading, these defects of the real estate failed to do what they were designed to do and *caused* his death.

Because Plaintiff has alleged a dangerous condition of Commonwealth real estate caused Nance's fatal injuries, summary judgment must be denied. Again, it will be for the jury to determine whether the main alarm system, consisting of the horn/strobe light would have alerted Nance in time to escape, and whether the presence of insulation between the kitchen and bedroom would have slowed the spread of fire.

### Comparative Negligence

■ Finally, the PHA asserts that the real estate exception does not apply when a plaintiff causes his own injury. To support its argument it cites two cases, *McCloskey v. Abington School District,* 115 Pa.Cmwlth. 289, 539 A.2d 946 (1988) and *Pennsylvania State Police v. Klimek,* 839 A.2d 1173 (Pa.Cmwlth.2003). Neither of these cases supports the PHA's position.

In *McCloskey,* a student was rendered a quadriplegic when he fell from a set of gymnastic rings during gym class. The parents of the student brought an action for failure to supervise. There was no allegation that the gymnastic rings themselves were defective or dangerous. The student fell, and was hurt by his own

actions, not from any defect of the real estate itself. In *Klimek,* this Court held that the plaintiff's claim did not fall within the real estate exception because there was no dangerous condition of the cell that caused decedent's death because he hung himself. Because the dangerous condition must derive or originate from the Commonwealth property, the shoe lace from which decedent hung himself did not qualify as a dangerous condition.

Here, Plaintiff disputes that Nance's death was caused by his own actions. Plaintiff alleges that Nance's fatal injuries were caused by the defective conditions in the PHA's real estate.

■ Pennsylvania has adopted a modified rule of comparative negligence. A plaintiff's recovery is barred only if his contributory negligence is greater than the causal negligence of the defendants against whom recovery is sought. *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 542 A.2d 525 (1988). Otherwise, the plaintiff's damages are diminished in proportion to the amount of negligence attributable to him. *Werner v. Quality Service Oil. Co. Inc.,* 337 Pa.Super. 264, 486 A.2d 1009 (1984). Section 7102 of the Judicial Code, the Comparative Negligence Act, provides:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the

amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102(a).

Whether Nance's own negligence exceeded the negligence of the PHA is also a question for the finder of fact at trial and not one properly considered at the summary judgment stage.

### Conclusion

In sum, this Court is of the opinion that the dangerous conditions of PHA's real estate alleged by Plaintiff fall within the real estate exception to sovereign immunity. 42 Pa.C.S. § 8522(b)(4). Therefore, the PHA is not immune from suit.

Accordingly, the order of the trial court which denied PHA's motion for summary judgment is affirmed.

### ORDER

AND NOW, this 23rd day of September, 2010, the order of the Court of Common Pleas of Philadelphia County the above-captioned matter is hereby affirmed. The portion of the common pleas court's order, regarding the complaint filed on behalf of Herman Nance, which denied the Philadelphia Housing Authorities' Cross–Motion for Summary Relief is affirmed.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. I believe that under *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), Herman Nance's estate cannot pursue a claim for damages against the Philadelphia

1. It further explained that
 the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect *of the land itself causes the injury, not merely when it facilitates the injury by the acts of others*, whose acts are outside the statute's scope of liability.

Housing Authority. *Dean* established the bright line rule that it must be the dangerous real estate fixture itself that causes the injury before a plaintiff can pursue a damage claim against the Commonwealth under the real estate exception to sovereign immunity. Here, it was the actions of Nance that caused the fire and his unfortunate death.

In *Dean*, the Supreme Court held that PennDOT's failure to install a guardrail along a dangerous curve that would have mitigated or entirely prevented harm to a plaintiff, whose vehicle left the road, did not meet the real estate exception. The Supreme Court reasoned that the Commonwealth does not have a duty to prevent or even minimize injuries from dangers not caused by the Commonwealth, stating "[t]he Commonwealth ... is not a guarantor of the safety of the highway." *Dean*, 561 Pa. at 511, 751 A.2d at 1134 n. 8.[1] If the Commonwealth's property is safe for its intended purpose, then the Commonwealth cannot be held liable for damages where its property causes harm.

Here, Nance left a frying pan unattended on a gas stove in his kitchen, which started a fire in his apartment that spread throughout the building. He died in the fire that he started. There was an alarm in Nance's apartment as well as a hallway alarm, consisting of strobe lights and a horn. However, the hallway alarm was delayed because half of its heat sensors were missing. The alarm in Nance's apartment activated "early on" in the incident.[2]

*Dean*, 561 Pa. at 509, 751 A.2d at 1133 (citation omitted) (emphasis added).

2. Nance's estate argues in its brief that the smoke detector in Nance's apartment malfunctioned, but there is no factual evidence in the record to support this claim. Nance's own expert stated in his expert report that a

Nance's estate seeks wrongful death damages from the Philadelphia Housing Authority on the theory that the decedent could have saved himself had the Commonwealth properly maintained the fire alarm system; installed fire stops and insulation; and provided adequate emergency lighting and extinguishers. These factual assertions would be for a jury to decide in a private tort case. However, even if found true here, the real estate exception would not be satisfied. The building could be used for its intended purpose as a residence with or without these systems. The absence of an appropriate warning system or an extinguisher is no different from the absence of the guardrail in *Dean.* The majority notes that it is foreseeable that an elderly man will leave cooking items on a stove unattended. However, it is also foreseeable that a person driving too fast on a highway next to a cliff that is not protected by a guardrail will plunge down the embankment. Foreseeability is not relevant under *Dean.*

*Dean* teaches that the harm must be caused by the realty or fixture. As noted by the Authority, if the smoke alarm system had caused the fire or had caused an electric shock to a resident, then the real estate exception would be satisfied. In this regard, the Authority has correctly characterized *Dean's* principles in its motion for summary judgment.

The majority relies upon *City of Philadelphia v. Duda,* 141 Pa.Cmwlth. 88, 595 A.2d 206 (1991), in which this Court held that the City could be held liable for not placing depth markers along a swimming pool deck. Because *Duda* was decided before *Dean,* this Court did not determine whether a pool is safe for its intended purpose without depth markers. The issue in *Dean* was causation. However, an argument can be made that a pool, intended for the purpose of diving, is unsafe without depth indicators.

The majority also relies on *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), another causation case. In *Crowell,* the driver of a vehicle caused a fatal accident after he followed a directional sign placed by the City and drove the wrong way down a one-way street. *Crowell* is inapposite. The Political Subdivision Tort Claims Act specifically waives immunity for "[a] dangerous condition of trees, traffic signs, lights or other traffic controls ... under the care, custody or control of the local agency...." 42 Pa.C.S. § 8542(b)(4). In any case, a misplaced directional sign renders a street unsafe for its intended purpose.[3]

The Commonwealth is not a corporation that is motivated by profit when it makes decisions on the installation or maintenance of guardrails or fire alarm systems. The Commonwealth's sole mission is to build safe roads and to provide safe housing to those who cannot provide for themselves. The legislature has decided to narrowly circumscribe the Commonwealth's liability under the real estate exception, and it is for the legislature to expand the exception to sovereign immunity to cover Nance's situation. Liability for failure to prevent harm could be limitless, and there are only so many public dollars

---

resident who occupied the unit next to Nance "heard the Nance apartment smoke detector activation very early on and it was a considerable time later that she opened her apartment door to find the hallway filled with smoke." R.R. 631a. None of Nance's experts testified that the smoke detector alarm in Nance's apartment did not activate. Further, the complaint does not allege that the smoke detector in Nance's apartment failed to activate.

**3.** Indeed, in *Dean,* the Supreme Court noted that unlike the absence of a traffic signal or appropriate road signs, the lack of a guardrail does not render a highway unsafe for travel.

to be spent. Therefore, it is not *all* conditions of realty that cause personal injury but only "dangerous conditions" that can lead to liability. *Dean,* 561 Pa. at 512 n. 9, 751 A.2d at 1134 n. 9.

*Dean* has resolved the issue of the scope of the real estate exception and drawn a very tight circle around the bounds of that exception. I believe it compels the grant of summary judgment to the Philadelphia Housing Authority on Nance's complaint.

President Judge LEADBETTER and Judge SIMPSON join in this dissent.