# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John F. Geier, Executor of the Estate of  :
Marianne M. Geier and John F. Geier,  :
her husband  :
 :
 :
v.  :
 :
 :
Board of Public Education of the  :
School District of Pittsburgh  :
 :
 :
v.  :   No. 625 C.D. 2016
 :   Argued: November 15, 2016
 :
American Art Clay Company, Inc.,  :
a/k/a Amaco, Inc., American Biltree,  :
and it's division AMTICO; AVCO  :
Corporation, on behalf of its  :
Lycoming-Spencer division; Azrock  :
Industries, Board of Public Education  :
of the School District of Pittsburgh, a  :
Delaware Corporation, f/k/a Viacom,  :
Inc., successor by merger to CBS  :
Corporation, a Pennsylvania  :
Corporation, f/k/a Westinghouse  :
Electric Corporation; Certainteed  :
Corporation; Conwed Corporation,  :
Individually and as successor  :
to the Wood Conversion Company;  :
F.B. Wright Company; George V.  :
Hamilton, Inc.; Georgia Pacific  :
Corporation; Hinkle Hoffman Supply  :
Company; I.U. North America, Inc.,  :
as successor by merger to the Garp  :
Company, formerly known as  :
The Gage Company, formerly known  :
as Pittsburgh Gage and Supply  :
Company; Kaiser Gypsum Company,  :
Inc.; Mannington Mills, Inc.,  :
Owens-Illinois, Inc., Plum Borough  :
School District; Rust Engineering  :
and Construction, Inc., Trane U.S. Inc.  :
f/k/a American Standard, Inc., successor  :
in interest to Kewanee Boiler Company,  :

Inc.; Union Carbide Corporation and its Linde Division; Cemline Corporation; Oakfabco, Inc.; Rheem Manufacturing Company; ECR International; Allentown; Armstrong Pumps, Inc.; Arnold Lumber and Supply Co.; The Columbus Heating and Ventilating Company; Davis Fetch Corporation of Pennsylvania; Eaton Corporation, as successor-in-interest to Cutler-Hammer, Inc.; Grinnel LLC; Hammond Valve Company; Houston-Starr Company; ITT Corporation, f/k/a ITT Industries; Kennedy-Tubular Products, Inc., in its own right as and successor-in-interest to Pennco Industries; Kurtz Bros.; Milton W. Ryan and Associates, Inc.; North American Manufacturing Company; Schultheis Bros. Co.; and Square D Company

Appeal of:  Board of Public Education of the School District of Pittsburgh

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED: January 25, 2017**


In this interlocutory appeal by permission, the Pittsburgh School District's Board of Public Education (PBE) seeks review of an order of the Court of Common Pleas of Allegheny County (trial court) denying its motion for summary judgment in a negligence action for personal injuries caused by exposure to asbestos dust.  PBE, a local government agency, asserts it is entitled to

governmental immunity under Sections 8541-64 of the Judicial Code, 42 Pa. C.S. §§8541-64, often referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), and the Pennsylvania Constitution, for injuries caused by workplace exposure to products containing asbestos. Because we conclude PBE could be liable to an employee for exposure to asbestos dust *if* the condition causing the exposure falls within one of the exceptions to governmental immunity, and because we conclude this is the only issue before us on interlocutory appeal by permission, we affirm.

## I. Background
### A. Generally

Marianne M. Geier (Decedent) worked for PBE as a math teacher at South High School from the fall of 1958 through the summer of 1959. During this period of time, Decedent was exposed to asbestos dust coming from pipe coverings on the steam and water pipes located in the hallways, stairways, and classrooms of the high school.

Five decades later, in October 2013, Decedent was diagnosed with mesothelioma. Thereafter, Decedent and her husband, John F. Geier (collectively, Plaintiffs) filed a tort action for severe and permanent personal injuries against PBE and 40 other defendants (collectively, Defendants), which include various corporate entities engaged in the manufacturing, fabricating, distributing, selling, supplying, installing and removing of asbestos products. Plaintiffs allege Decedent's occupational exposure to asbestos dust, caused by Defendants' acts or

2

omissions, caused her mesothelioma. Plaintiffs sought compensatory and punitive damages for their injuries. Decedent ultimately passed away in July 2016.

## B. Motion for Summary Judgment
## 1. Immunity Under Tort Claims Act

In March 2016, following the close of discovery, PBE filed a motion for summary judgment asserting governmental immunity.[1] PBE argued its duty to provide a safe workplace does not fall within any of the eight exceptions waiving immunity under the Tort Claims Act. Further, although Plaintiffs allege Decedent suffered exposure to asbestos-containing products manufactured, sold and distributed by third parties, PBE averred it was insulated from liability because the Tort Claims Act bars claims for damages facilitated by the acts of others.

PBE further observed that Plaintiffs' complaint sets forth a claim for recovery under the utility service facilities exception in Section 8542(b)(5) of the Tort Claims Act, which provides:

> **(a) Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity

---

[1] School districts are considered local agencies entitled to governmental immunity under the Tort Claims Act. Taylor v. Ne. Bradford Sch. Dist., 101 A.3d 144 (Pa. Cmwlth. 2014).

3

generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

**(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

\* \* \* \*

(5) *Utility Service facilities.*—A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. §8542(b)(5).

Although not expressly raised by Plaintiffs, we recognize that the real property exception in Section 8542(b)(3) of the Tort Claims Act may also be relevant in this case.[2] This exception provides:

---

[2] We may affirm an order for any reason, regardless of the trial court's rationale, so long as the basis for our decision is clear on the record. Guy M. Cooper, Inc. v. E. Penn Sch. Dist., 903 A.2d 608 (Pa. Cmwlth. 2006).

4

*(3) Real property.*—<u>The care, custody or control of real property in the possession of the local agency</u>, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, 'real property' shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) <u>facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights of-way</u>;

(iii) streets; or

(iv) sidewalks.

42 Pa. C.S. §8542(b)(3) (emphasis by underline added).

As to all exceptions to governmental immunity, to fall within an exception to governmental immunity: (1) the damages sought must otherwise be recoverable under common law or a statute creating a cause of action against a person not having a defense under 42 Pa. C.S. §8541; (2) the negligent act of the local agency, or an employee thereof must have caused the injury; and, (3) the negligent act of the local agency must fall within one of the eight enumerated exceptions in 42 Pa. C.S. §8542. <u>Sellers v. Twp. of Abington</u>, 67 A.3d 863 (Pa. Cmwlth. 2013). PBE also noted the exceptions to governmental immunity are narrowly construed given the legislature's expressed intent to insulate political subdivisions from tort liability. <u>Love v. City of Phila.</u>, 543 A.2d 531 (Pa. 1988); <u>Walsh v. City of Phila.</u>, 585 A.2d 445 (Pa. 1991); <u>Sellers</u>.

5

PBE further argues that Plaintiffs must allege that the dangerous condition causing the injury must be "of the facilities of steam, water, gas or electric" and "located within rights of way." 42 Pa. C.S. §8542(b)(5). In addition, it is critical that the utilities' facilities themselves cause the injury and not merely facilitate the injury by the acts of others. Falor v. Sw. Pa. Water Auth., 102 A.3d 584 (Pa. Cmwlth. 2014).

To fall within the real property exception in Section 8542(b)(3) of the Tort Claims Act, a claim must allege an injury caused by the real property itself, or the negligent care, custody or control of it. Mandakis v. Borough of Matamoras, 74 A.3d 301 (Pa. Cmwlth. 2013). To that end, the real property exception does not apply to personal property not permanently attached or affixed to the real property. Sanchez-Guardiola v. City of Phila., 87 A.3d 934 (Pa. Cmwlth. 2014).

Nonetheless, a local agency's negligent care, custody or control of its real property includes the agency's negligent maintenance of its real property. See Grieff v. Reisinger, 693 A.2d 195 (Pa. 1997) (claim for injury caused by ignition of cleaning fluid used by fire chief to clean floor fell within real property exception); Hanna v. West Shore Sch. Dist., 717 A.2d 626 (Pa. Cmwlth. 1988) (claim for injury caused by slip and fall on accumulated water used to mop floor fell within the real property exception); Kelly v. Curwensville High Sch., 595 A.2d 787 (Pa. Cmwlth. 1991) (claim for injury caused by fall through skylight from permanently attached ladder located too close to skylight fell within real property exception).

6

Here, Decedent stated in an affidavit that she was occupationally exposed to the following asbestos-containing products: (a) pipe coverings; (b) floor tile; (c) drywall; and (d) joint compound. However, Decedent mentioned no exposure to asbestos-containing products in her classroom. PBE further asserted Decedent failed to identify the rights-of-way where the alleged dangerous conditions were located. Moreover, Decedent testified in her deposition that she had no knowledge that any PBE employee or representative was aware of the potential hazards of asbestos at South High School during the 1958-59 school year.

Summarizing, PBE asserted that none of the asbestos-containing products to which Decedent may have been exposed constituted part of PBE's utility service facilities located within rights-of-way. Therefore, PBE reasoned, Plaintiffs failed to demonstrate the existence of a genuine issue of material fact that would allow a jury to find that damages would be recoverable under common law or that Plaintiffs' claims fell within the utility service facilities exception. As such, PBE claimed it was entitled to judgment in its favor as a matter of law. Sellers.

### 2. Denial of Summary Judgment; Emergency Motion to Amend

By order dated April 4, 2016, the trial court denied PBE's motion for summary judgment.[3] In response, PBE filed an emergency motion requesting that the trial court certify for immediate appeal PBE's argument that it is entitled to governmental immunity under the Tort Claims Act. In particular, PBE asserted:

---

[3] The trial court did not author an opinion in support of its order denying summary judgment.

a. an alleged failure to provide a safe workplace does not fall within the scope of any of the exceptions to immunity set out in the [Tort Claims Act];

b. the pipe covering and cement that was supposedly present on pipes located in South High School were supplied by third-parties and [PBE] could not be held liable for their actions[;] and

c. the utility exception does not apply to Plaintiffs' claims.

Emergency Motion to Amend at ¶12; R.R. at 245a.

PBE also asserted that to date, no appellate court ruled on the central question of whether a local agency can be subject to liability under the exceptions to governmental immunity based on an employee's alleged occupational exposure to asbestos. PBE further asserted this issue constitutes a controlling question of law because if Plaintiffs' claims are barred by governmental immunity, Plaintiffs' claims fail.

Consequently, PBE requested that the trial court amend its order denying summary judgment to provide for an interlocutory appeal to determine whether a local agency can be subject to liability under the exceptions to governmental immunity based on an employee's alleged occupational exposure to asbestos. By order dated April 8, 2016, the trial court denied PBE's emergency motion. R.R. at 260a.

8

## C. Petition for Review

PBE next filed a petition for review in this Court seeking review of the trial court's order denying the emergency motion. See R.R. at 261a-368a. In May 2016, the Court, speaking through Senior Judge James G. Colins, granted PBE's petition and certified the following issue for review:

> Is a school district entitled to governmental immunity under [the Tort Claims Act], and the Pennsylvania Constitution, for work-based exposure to asbestos-containing products[?]

R.R. at 370a.

## II. Issues

On appeal, PBE contends it is entitled to governmental immunity under the Tort Claims Act, and the Pennsylvania Constitution, for injuries to Plaintiffs caused by workplace exposure to products containing asbestos. PBE asserts Plaintiffs' allegations that PBE is liable to them for failing to provide Decedent with a safe place to work do not fall within the scope of any of the exceptions to immunity in the Tort Claims Act. PBE also contends it is entitled to summary judgment here because the record contains no evidence that PBE knew or should have known of the supposedly unsafe nature of Decedent's working conditions or the dangers posed by exposure to asbestos.

## III. Argument

### A. Pennsylvania Constitution; Tort Claims Act Generally

PBE contends, as a local government agency, it is entitled to governmental immunity under the Tort Claims Act, and the Pennsylvania

9

Constitution, for injuries to Plaintiffs caused by workplace exposure to products containing asbestos. Article I, Section 11 of the Pennsylvania Constitution provides (with emphasis added):

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. <u>Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct</u>.

PA. CONST. art. I, §11.

PBE points out Article I, Section 11 of the Pennsylvania Constitution provides the General Assembly with the authority to decide the extent to which the Commonwealth, its agencies, and its local political subdivisions, may be held liable for tortious conduct. See <u>Zauflik v. Pennsbury Sch. Dist.</u>, 104 A.3d 1096 (Pa. 2014). All eight exceptions to governmental immunity are limited to specific acts of local agencies or their employees. See 42 Pa. C.S. §8542(b)(1)-(8). Further, as discussed above, the exceptions to governmental immunity are narrowly construed given the legislature's expressed intent to insulate political subdivisions from tort liability. <u>Dorsey v. Redman</u>, 96 A.3d 332 (Pa. 2014); <u>Mascaro v. Youth Study Ctr.</u>, 523 A.2d 1118 (Pa. 1987).

## B. Duty to Provide Safe Workplace

Here, Plaintiffs' complaint alleges that PBE is liable to them because it breached a common law duty by failing to provide Decedent with a safe place to work. In paragraph 30 of their complaint, Plaintiffs allege Decedent's injuries

were caused by the negligent acts of PBE and its employees or agents acting within the scope of their duties "with respect to a dangerous condition of the utility service facilities of steam, sewer, water, gas and electric systems owned by [PBE] and located within rights of way that created a reasonably foreseeable risk of the kind of injury suffered by [Decedent]." R.R. at 39a (emphasis added).

Essentially, PBE contends, Plaintiffs claim PBE is liable for failure to provide Decedent with a safe place to work. However, PBE argues, an unsafe workplace does not fall within any of the eight exceptions to governmental immunity, including acts involving a dangerous condition of utility service facilities. In particular, PBE cites Paragraph 33 of Plaintiffs' complaint, which alleges PBE:

> a. Purchased and maintained asbestos-containing products relating to utility service facilities used at the schools by its employees and/or agents/independent contractors;
>
> b. Had their [sic] employees and/or agents/independent contractors install and remove various asbestos-containing products when they repaired and maintained equipment and piping systems relating to utility service facilities without taking steps to minimize or remove exposures to asbestos-containing products;
>
> c. Specified the use of asbestos-containing products by their [sic] employees and/or agents/independent contractors without requiring the use of appropriate precautions to minimize or eliminate exposure to asbestos-containing products;
>
> d. Failed to exercise reasonable care to adequately warn [Decedent] of the risks, dangers and harm to which she was exposed in working around and inhaling toxic and/or pathogenic dusts including asbestos;

11

e. Failed to minimize or eliminate [Decedent's] exposure to asbestos; by not utilizing proper methods including but not limited to adequate ventilation with exhaust fans, dampening or wetting procedures and other recommended and available procedures to preclude exposures;

f. Failed to conduct any test to determine the presence and/or amount of asbestos, in and around [Decedent]; and

g. Failed to advise [Decedent] of the increased risk of pleural, pericardial or peritoneal mesothelioma, lung cancer, cancer of the gastrointestinal tract and non-malignant pleural and parenchymal abnormalities as well as asbestosis, and other asbestos diseases.

R.R. at 40a.

In short, PBE argues Plaintiffs' claims do not fall within any of the eight specific exceptions in 42 Pa. C.S. §8542(b). PBE asserts the General Assembly has not decided that a governmental entity can be held liable because it allowed one of its employees to work in an allegedly dangerous environment. Therefore, PBE maintains the trial court erred in denying its motion for summary judgment.

### C. PBE's Knowledge of a Dangerous Condition

PBE also contends that Plaintiffs must not only establish the existence of a dangerous condition of the utility service facilities that caused Decedent's injuries, but also that PBE knew or should have known of the dangerous condition and made no effort to correct it.

12

Here, PBE asserts, Plaintiffs allege the utility service facilities exception applies because: (a) South High School, where Decedent worked during the 1958-59 school year, utilized pipes to circulate steam in order to heat the building; and, (b) those pipes purportedly constituted a dangerous condition because they were covered by a material that contained asbestos.

According to the plain language of 42 Pa. C.S. §8542(b)(5), the utility service facilities exception only applies if Plaintiffs can show PBE had knowledge of the allegedly dangerous condition at a time sufficiently prior to Decedent's exposure to have taken steps to protect against that danger. Here, PBE asserts, Plaintiffs acknowledge they have no evidence that PBE knew or should have known in 1958-1959 of the hazards of asbestos. Because Plaintiffs have no evidence that PBE reasonably should have known, at or prior to the time of Decedent's employment, that asbestos in the materials used to cover certain steam pipes posed a health hazard, Plaintiffs cannot prevail on their allegation that PBE acted negligently in not protecting Decedent from exposure to asbestos dust.

For this reason, PBE asserts, Plaintiffs failed to demonstrate the existence of a genuine issue of material fact that would permit a jury to find that Plaintiffs' claims fell within the utility service facilities exception. Dorsey. Therefore, PBE urges, the trial court committed an error of law and an abuse of discretion by failing to enter summary judgment in PBE's favor.

13

## IV. Analysis

### A. Common Law Duties

To begin, we note that at common law PBE, a possessor of land, owes an invitee a high duty of care summarized as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land <u>if, but only if</u>, he:
> (a) <u>knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees</u>, and
> (b) <u>should expect that they will not discover or realize the danger, or will fail to protect themselves against it</u>, and
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS §343 (1965) (emphasis added). The owner or possessor of real property must use *reasonable care* to make the premises safe or warn the invitee of dangerous conditions of the property. The possessor must also use *reasonable care* to discover or inspect for any such dangerous conditions. <u>Id.</u> The invitee enters the premises with implied assurance of preparation and *reasonable care* for his protection and safety while he is there. <u>Treadway v. Ebert Motor Co.</u>, 436 A.2d 994 (Pa. Super. 1982).

In addition, we recognize there are different types of invitees. Pennsylvania law defines an "invitee" as follows (with emphasis added):

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

14

> (3) A business visitor is a person who is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Gutteridge v. A.P. Green Servs., Inc., 804 A.2d 643, 655-56 (Pa. Super. 2002); RESTATEMENT (SECOND) OF TORTS §332 (1965). With respect to the employer/employee or master/servant relationship, a servant, whether an industrial employee or a domestic servant, is a business visitor at common law. RESTATEMENT (SECOND) OF TORTS §332 cmt. *j*. (1965). If the invitee is an industrial employee, the purpose of his entry is directly connected with the business which the possessor conducts upon the land. Id. If the invitee is a domestic servant, he enters the land for a business purpose of his own which concern the affairs of possessor, in that it is incidental to the possessor's residential and social use of the land. Id.

Nonetheless, the relationship of master and servant, or employer and employee, has certain peculiarities which provide the servant or employee with a somewhat different degree of protection from that given to other classes of business visitors. Id. cmt *j*. In some instances, the protection is greater, in others, it is less. Id. "These peculiarities require that the rules which determine the liability of a master to a servant be stated in Chapter 14 of the Restatement of Agency, Second." Id.

"In creating and maintaining the conditions of employment, the master has a duty to his servants to have precautions taken which reasonable care,

15

intelligence and regard for the safety of his servants require." RESTATEMENT (SECOND) OF AGENCY §493 (1958).  Comment *a* to Section 493 states in part:

> In creating the conditions under which his servants are to work, the master must conform to the conduct of the ordinary prudent person having the special knowledge which, as stated in Section 495, the employer is required to have.  The employer is not an insurer.  The precautions he is required to take vary with the enterprise in which his servants are engaged.  Thus, in a simple business, the precautions required are correspondingly small.  Insofar as the work is conducted on his premises, his duties to his employees are, in most cases, substantially the same as those of a landowner to any business visitor.

RESTATEMENT (SECOND) OF AGENCY §332 cmt. *a* (1958) (emphasis added).

Further, "[a] master is subject to a duty to his servants to conduct his business in the light of knowledge which he has, and of such knowledge as to the conditions likely to harm his servants as persons experienced in the business and having special acquaintance with the subject matter have."  RESTATEMENT (SECOND) OF AGENCY §495 (1958).  Comment *a* to Section 495 provides (with emphasis added):

> Ordinarily, a servant has reason to believe that his employer is himself an expert or has employed experts who have the special knowledge requisite to create safe conditions of employment, including the maintaining of safe structures, the supplying of proper instrumentalities, the orderly arrangement of the business, and the other matters as to which the employer has special duties to his servants.  If the servant so believes, the master is subject to liability unless his plant, equipment and methods are reasonably safe in view of what is generally known by experts in his business.

16

Id. cmt. *a*. With regard to notice to the employer or master of dangerous conditions, Section 496 of the Restatement of Agency, Second, provides (with emphasis added):

> For the purpose of determining whether or not due care has been used in the performance of the non-delegable duties of the master to his servants, <u>the master has notice of facts affecting the safety of his servants if notice of such facts comes to him, or to a servant or other person whose duty is to act upon them in the performance of the master's duty to protect his servants</u>.

RESTATEMENT (SECOND) OF AGENCY §496 (1958).

Under Section 496, a master has a duty to take care to ascertain facts which would indicate danger to his servants. <u>Id.</u> cmt. *a*. Similarly, if the master ascertains facts indicating a dangerous condition, although he was under no duty to ascertain them, or even through the exercise of due care would not necessarily ascertain them, he is nevertheless under a duty to take action. <u>Id.</u>

As recognized by Section 528 of the Restatement of Agency, Second, a master's common law liability for failure to perform non-delegable duties owed his servant may be diminished or terminated by Workers' Compensation Acts. With the onset of compensation for Pennsylvania workers suffering occupational diseases, starting with statutes enacted in 1937, this was the case. <u>See</u> <u>Moffat v. Harbison-Walker Refractories Co.</u>, 14 A.2d 111 (Pa. 1940) (common law action against employer for occupational disease, alleging in part failure to furnish reasonably safe place to work and to warn plaintiff of incident dangers; statutory remedy excludes common law actions). In other words, since about 1938, the

17

common law has not been a basis for recovery for Pennsylvania workers exposed to occupational diseases by reason of their employment. Id.; see also Tooey v. AK Steel Corp., 81 A.3d 851 (Pa. 2013).

However, the Pennsylvania Supreme Court recently reorganized liability in this area. In Tooey v. AK Steel Corp., the Court addressed the 300-week occupational disease limitation provision under the current Workers' Compensation Act.[4] The Court essentially held that to the extent the occupational disease limitation provision precluded recovery under the Workers' Compensation Act, an employee could again seek a common law remedy. This decision is the basis for the current lawsuit, at least as it applies to Decedent's prior employers.

In sum, we recognize that under common law Decedent, a teacher during the 1958-59 school year, would have been entitled to the protections afforded a business invitee while on the premises of South High School. "The duty of care owed to a business invitee (or business visitor) is the highest duty owed to any entrant upon land." Gutteridge, 804 A.2d at 656 (emphasis added). "The landowner must protect an invitee not only against known dangers, but also against those that might be discovered with reasonable care." Id.

In Gutteridge, an asbestos case involving the death of an independent contractor's employee from mesothelioma, the Superior Court reversed a trial court order granting summary judgment in favor of PECO, an electric utility/landowner,

---

[4] Section 301(c)(2) of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §411(2).

on the basis that a disputed issue of material fact existed as to whether PECO violated its duty to a business invitee (employee of an independent contractor) by failing to warn him of the dangers of asbestos despite having superior knowledge of asbestos hazards. In so doing, the Superior Court noted that material issues of fact existed as to when the landowner and the independent contractor should have become aware prior to the employee's exposure that employees and contract workers needed protection from asbestos. In particular, the Superior Court noted that scientific literature indicated as early as 1935 that asbestos posed peculiar workplace hazards, and that the Commonwealth issued bulletins to public utilities regarding the hazards of asbestos and mesothelioma in 1960.

Keeping in mind an employer's common law duties to Decedent, an employee and business invitee during the 1958-59 school year, we review Plaintiffs' evidence.

### B. Plaintiffs' Evidence

Plaintiffs assert Decedent suffered exposure to asbestos dust from pipe coverings on the steam and water pipes at South High School while working as a math teacher during the 1958-59 school year. In her deposition, Decedent testified her classroom had a steam pipe which went from the ceiling to the floor. Dep. of Marianne M. Geier, 11/30/15 (Geier Dep.), at 103-04; R.R. at 130a-31a. A pipe covering fitted over the pipe like a doughnut. Id. at 104-05; R.R. at 131a-32a. The purpose of the pipe covering was to keep people from being burnt by the hot steam pipe. Id. at 106, R.R. at 133a. Repairs were made to the pipe covering during the year Decedent taught there. Id. at 105-07; R.R. at 132a-34a. Decedent

19

also testified that maintenance was performed on the walls and the floor and ceiling tiles in the classroom, the auditorium next to her classroom, and the halls. Id. at 108-16; R.R. at 135a-43a. If Decedent brushed up against the pipe covering, like many students did, she would have those materials on her clothes. Id. at 116-17; R.R. at 143a-44a.

During a later deposition, Decedent testified that when repairs were being made in the halls and the auditorium, she observed bags that contained powder. Geier Dep., 12/14/15, at 267-68; R.R. at 155a-56a. The maintenance men would mix the powder with water from hallway drinking fountains and then use it to repair the walls. Id. at 268-70; R.R. at 156a-58a. Decedent recalled seeing the words "joint compound" and "asbestos" on the bags. Id. at 273-74; R.R. at 161a-62a.

Plaintiffs argue PBE, as a landowner, must protect an invitee not only from known dangers, but also dangers that might be discovered with reasonable care. Chenot v. A.P. Green, Inc., 895 A.2d 55 (Pa. Super. 2006). In Chenot, the decedent, a construction worker, developed mesothelioma from asbestos dust from insulation on pipes from his workplace. In Chenot, the decedent's widow, as plaintiff, presented evidence that the owner of the building was a member of an industry association that knew of the dangers of asbestos many years before the decedent's exposure to it. In reversing summary judgment for the defendants, the Superior Court reasoned that the owner should have known it was exposing the decedent to reasonably foreseeable asbestos hazards and should have recognized the need to take special measures. Id.

In the present case, Decedent claimed she was exposed to asbestos dust from pipe coverings on the steam and water pipes in a building owned by PBE. As owner, PBE had a duty to protect Decedent, an invitee, from the hazards of asbestos pipe coverings which might have been discoverable with reasonable care. Chenot. Therefore, Plaintiffs claim they established that their claim would be cognizable under common law.

### C. Utility Service Facilities Exception

Under Section 8542(b)(5) of the Tort Claims Act, liability depends first on the strictly legal determination that the injury was caused by a dangerous condition of the local agency's property. Metro. Edison Co. v. City of Reading, 125 A.3d 499, 502 (Pa. Cmwlth. 2015) (citation omitted). Similarly, in Falor, we observed that in order for the utility service facilities exception to apply, the real property *itself* must cause the injury and not merely facilitate the injury by the acts of others.

We reject PBE's defense that Plaintiffs failed to identify the rights-of-way that contain the utility service facilities in question. We reject that defense because the utility service facilities in question are located within the PBE building (South High School) where Decedent worked. Thus, the facilities in question are located in a place accessible by PBE and over which PBE maintained control.

Nevertheless, the plain language of 42 Pa. C.S. §8542(b)(5) indicates the utility service facilities exception only applies if Plaintiffs can show that PBE

21

had knowledge of the allegedly dangerous condition or could reasonably be charged under the circumstances with notice of a dangerous condition at a time sufficiently prior to Decedent's exposure to have taken steps to protect against that danger. King v. Pittsburgh Water & Sewer Auth., 139 A.3d 336 (Pa. Cmwlth. 2016).

## D. Real Property Exception

In addition to alleging occupational exposure to asbestos-containing products in steam and water pipe coverings, Plaintiffs also allege Decedent was exposed to asbestos-containing products in materials PBE used to maintain and repair floor tiles, ceiling tiles and drywall. As discussed above, a local agency's negligent care, custody or control of its real property includes the agency's negligent maintenance of its real property. Grieff; Kelly; Hanna.

Moreover, although the real property exception to governmental immunity in 42 Pa. C.S. §8542(b)(3) does not include the term "dangerous condition," our Supreme Court recognized that in order for the real property exception to governmental immunity to apply, there must be negligence making the real property *unsafe* for which it is used. Snyder v. Harmon, 562 A.2d 307 (Pa. 1989). "The government owned real estate must be able to afford safety not only for the activities for which the property is regularly used but also intended to be used or reasonably foreseen to be used." Id. at 312. Regardless of the language in 42 Pa. C.S. §8542(b)(3), this Court continues to apply the term *dangerous condition* in cases involving the real property exception to governmental immunity.

22

See, e.g., Wombacher v. Greater Johnson Sch. Dist., 20 A.3d 1240 (Pa. Cmwlth. 2011).

### E. Dangerous Condition; Defects Having Source in Realty

As discussed above, in order for a dangerous condition of PBE's steam and water facilities or real property to fall within the exceptions to governmental immunity, the dangerous condition must derive from, originate, or have as its source, the local agency's realty. Falor. However, in Thornton v. Philadelphia Housing Authority, 4 A.3d 1143 (Pa. Cmwlth. 2010), we recognized that several defects in the property, such as a defective smoke detection system, lack of firewalls between apartments and insufficient insulation, which did not themselves directly kill the plaintiff, nevertheless substantially contributed to the plaintiff's death. As such, we determined they constituted dangerous conditions of the realty sufficient to invoke the real property exception because they profoundly contributed to the plaintiff's harm. In other words, the dangerous conditions in Thornton did not merely facilitate the plaintiff's injuries; they constituted an integral part of the building that caused the plaintiff's death and rendered the building unfit for its intended purpose. Id.

In addition, in Crowell v. City of Philadelphia, 613 A.2d 1178 (Pa. 1992), a jury determined that a misplaced directional road sign on a city street, which led to a fatal automobile accident, did not merely facilitate the plaintiffs' harm by others, but rather constituted a substantial contributing cause of the accident by causing a drunk driver to travel in the wrong direction into the path of the plaintiffs' car. As such, even though the harm in Crowell resulted in part from

23

the negligence of a third party, the plaintiffs' claim still fell within the "trees, traffic controls and street lighting" exception to governmental immunity in Section 8542(b)(4) of the Tort Claims Act, 42 Pa. C.S. §8542(b)(4).

### F. Integral Part of PBE's Utility Facilities or Real Estate

Here, Plaintiffs' evidence shows that during the 1958-59 school year, PBE used asbestos products, purchased from various third parties, to maintain floor and ceiling tiles, drywall, and steam and water pipe coverings. See Aff. of Marianne M. Geier, 10/12/15; R.R. at 97a. Decedent also testified that, on 10 or more occasions, maintenance workers repaired and replaced floor tiles and cracks in the drywall near her classroom. See Geier Dep., 11/30/15, at 75-117; R.R. at 104a-41a. In particular, Decedent testified the plaster the workers mixed to fill the cracks in the wall came from bags with "asbestos" written on them. Id. at 100-01; R.R. at 127a-28a.

Decedent further testified her classroom had a steam pipe which went from the ceiling to the floor. Id. at 103-04; R.R. at 130a-31a. A pipe covering fitted over the pipe like a doughnut. Id. at 104-05; R.R. at 131a-32a. The purpose of the pipe covering was to keep people from being burnt by the hot steam pipe. Id. at 106; R.R. at 133a. Repairs were made to the pipe covering during the year Decedent taught there. Id. at 105-07; R.R. at 132a-34a. If Decedent brushed up against the pipe covering, like many students did, she would have those materials on her clothes. Id. at 116a-17a.

In addition, Decedent testified she observed PBE's maintenance men mix a powdery product from bags with water from drinking fountains in the hallways and then use the mixture to repair the hallway walls. Geier Dep., 12/14/15, at 267-70; R.R. at 155a-58a. Decedent again testified the word "asbestos" clearly appeared on the bags containing the powder used to make the mixture. Id. at 273-74; R.R. at 161a-62a.

We hold that a public employer has a common law duty to create reasonably safe conditions of employment, including the maintaining of safe structures. See RESTATEMENT (SECOND) OF AGENCY §495 (1958). Further, an employer is charged with such knowledge as to the conditions likely to harm its servants as persons experienced in the business and having special acquaintance with the subject matter have. Id. Therefore, it is possible for a local agency to be liable to an employee for workplace exposure to asbestos dust, *if* the condition causing exposure falls within one of the exceptions to governmental immunity.

Given the evidence here of PBE's use of asbestos-containing products in its maintenance of its steam and water pipe coverings, and repair of its floors, ceilings and walls, and the Decedent's contraction of mesothelioma, we conclude Plaintiffs sufficiently alleged a dangerous condition of PBE's utility service facilities and real property substantially contributed to Decedent's mesothelioma and ultimate death. Crowell; Falor; Thornton.

In addition, Plaintiffs' factually supported allegations of PBE's maintenance workers' actions in spreading asbestos dust during the maintenance or

repair of the steam and water pipe coverings, floor and ceiling tiles and drywall, while Decedent was present, are sufficient to assert a claim that PBE's negligent care, custody or control of its real property substantially contributed to Decedent's death.  Grieff; Kelly; Hanna.

### G. PBE's Notice of Dangerous Condition

As noted above, the plain language of 42 Pa. C.S. §8542(b)(5) indicates the utility service facilities exception only applies if Plaintiffs can show that PBE had knowledge of the allegedly dangerous condition at a time sufficiently prior to Decedent's exposure to have taken steps to protect against that danger. King; Falor.  Here, however, Plaintiffs do not identify or cite to any evidence in the record supporting a finding that PBE knew, or at least should have known of the dangers of asbestos, prior to Decedent's employment in 1958.

However, it is unclear whether the issue of notice of a dangerous condition was fairly submitted to the trial court as part of the motion for summary judgment.  PBE's "Brief in Support of Non-Product Identification Motion for Summary Judgment" fails to develop the "notice" issue.  See R.R. at 74a-96a. Likewise, "Plaintiffs' Brief in Opposition to Non-Product Identification Motion for Summary Judgment of Defendant Board of Education of the School District of Pittsburgh" does not address the "notice" issue.  See R.R. at 225a-240a.

Certainly, PBE raises the issue in its brief to this Court.  However, PBE does not direct our attention to any place in the record below where this issue was reasonably developed before the trial court for decision.  Given the foregoing,

26

we are not convinced the "notice" issue was part of the trial court's denial of summary judgment, and we are not convinced that the "notice" issue is encompassed in our limited permission for interlocutory appeal. For these reasons, we decline PBE's invitation to reverse the trial court based solely on the "notice" issue.

### V. Conclusion

We hold that given an employer's usual common law duty to create reasonably safe conditions of employment, including the maintaining of safe structures, RESTATEMENT (SECOND) OF AGENCY §495 cmt. *a* (1958), it is possible for a local agency to be liable to an employee for workplace exposure to asbestos dust, *if* the condition causing exposure falls within one of the exceptions to governmental immunity.

Moreover, given the evidence here of PBE's use of asbestos-containing products in its maintenance of its steam and water pipe coverings, and repair of its floors, ceilings and walls, and the Decedent's contraction of mesothelioma, we conclude Plaintiffs sufficiently alleged a dangerous condition of PBE's utility service facilities and real property substantially contributed to Decedent's mesothelioma and ultimate death.

Further, while PBE asserts Plaintiffs offered no evidence to support a determination that it knew or reasonably could have discovered the dangers associated with exposure to asbestos before 1958, PBE did not seek summary judgment on this basis. Additionally, PBE fails to advise where the "notice" issue

27

was fairly developed before the trial court.  Therefore, we conclude that the "notice" issue is not before us on limited interlocutory appeal by permission, and we decline to reverse the trial court on that basis.  Accordingly, we affirm.


ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John F. Geier, Executor of the Estate of : 
Marianne M. Geier and John F. Geier, : 
her husband :
                        :

        v. :

Board of Public Education of the :
School District of Pittsburgh :
                        :

        v. :    No. 625 C.D. 2016
                        :    Argued: November 15, 2016

American Art Clay Company, Inc., :
a/k/a Amaco, Inc., American Biltree, :
and it's division AMTICO; AVCO :
Corporation, on behalf of its :
Lycoming-Spencer division; Azrock :
Industries, Board of Public Education :
of the School District of Pittsburgh, a :
Delaware Corporation, f/k/a Viacom, :
Inc., successor by merger to CBS :
Corporation, a Pennsylvania :
Corporation, f/k/a Westinghouse :
Electric Corporation; Certainteed :
Corporation; Conwed Corporation, :
Individually and as successor :
to the Wood Conversion Company; :
F.B. Wright Company; George V. :
Hamilton, Inc.; Georgia Pacific :
Corporation; Hinkle Hoffman Supply :
Company; I.U. North America, Inc., :
as successor by merger to the Garp :
Company, formerly known as :
The Gage Company, formerly known :
as Pittsburgh Gage and Supply :
Company; Kaiser Gypsum Company, :
Inc.; Mannington Mills, Inc., :
Owens-Illinois, Inc., Plum Borough :
School District; Rust Engineering :
and Construction, Inc., Trane U.S. Inc. :
f/k/a American Standard, Inc., successor :
in interest to Kewanee Boiler Company, :

Inc.; Union Carbide Corporation and : 
its Linde Division; Cemline : 
Corporation; Oakfabco, Inc.; Rheem : 
Manufacturing Company; ECR : 
International; Allentown; Armstrong : 
Pumps, Inc.; Arnold Lumber and : 
Supply Co.; The Columbus Heating : 
and Ventilating Company; Davis : 
Fetch Corporation of Pennsylvania; : 
Eaton Corporation, as successor-in- : 
interest to Cutler-Hammer, Inc.; : 
Grinnel LLC; Hammond Valve : 
Company; Houston-Starr Company; : 
ITT Corporation, f/k/a ITT Industries; : 
Kennedy-Tubular Products, Inc., : 
in its own right as and : 
successor-in-interest to Pennco : 
Industries; Kurtz Bros.; Milton W. : 
Ryan and Associates, Inc.; North : 
American Manufacturing Company; : 
Schultheis Bros. Co.; and Square D : 
Company : 
: 
Appeal of:  Board of Public Education : 
of the School District of Pittsburgh : 

# **O R D E R**

AND NOW, this 25th day of January, 2017, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge